Maples *v.* Geller and Raffer.

## MARY MAPLES, RESPONDENT, *v.* SOL. GELLER, ADMINISTRATOR, AND RICHARD RAFFER, APPELLANTS.

After an answer is *filed* judgment cannot be entered by default, although the answer may not be served.

Service of answer is for convenience of plaintiff's counsel and may be enforced by the Court, but is not necessary to give jurisdiction of the defendant.

A joint action *at law* cannot be maintained against survivor and administrator of deceased maker of a promissory note.

The rule in equity has been that the estate of a deceased joint obligor could only be reached when survivor was bankrupt or insolvent.

Of late Courts of equity have held that partnership debts might be enforced against the estate of deceased partners as several debts.   Query: Is this good law?

Any form of complaint under our system may be treated as a bill in equity.   But this is not a bill seeking relief against defendant on the ground that his intestate was severally bound for the debt.

When an erroneous judgment is entered and there is a motion made in the Court below to have that judgment set aside, the appeal lies direct from the judgment and not from the order refusing to set it aside.

APPEAL from the Fourth District Court of the State of Nevada, Washoe County, Hon. C. C. GOODWIN presiding.

The facts of the case are stated in the opinion of the Court.

*J. C. Foster*, Counsel for Appellants.

*Geo. A. Nourse*, Attorney General, for Respondent.

That portion of briefs in relation to statute of limitations is omitted, as that part of the case was never examined or passed on by the Court.

The other points made by Appellants were:

*First*—No default was ever 'entered against defendants as required by Practice Act.

*Second*—The judgment is not such a one as a Clerk may enter up. It is a decree directing certain things to be done. (See *Kelly* v. *Van Alstine*, 17 Cal. 364.)

*Third*—The note is a joint note. On such a note the judgment should have been against the joint property of all, and not a mere several judgment against one defendant. (*Kelly* v. *Van Alstine*, 17 Cal. 566.)

The following points were made by Respondent:

*First*—Judgment was properly entered against defendants on proof of failure to serve answer within time allowed after overruling demurrer. The statute is imperative that answer shall both be filed and served.

*Second*—Defendants having demurred and thereby admitted the truth of allegations in complaint, no entry of default was necessary.

*Third*—If judgment by default was erroneous after answer filed, but not served, appellants should have sought their remedy by motion in the Court below. When such remedy is attainable in the Court below, an appellate Court will not interfere. (*Guy* v. *Ide*, 6 Cal. 99–101.) Nor is it an answer to this to say: appellants did move to set aside the judgment in the Court below. If that Court improperly refused to set it aside, the appeal is from that order and not from the judgment.

*Fourth*—Admitting the judgment should have been joint as to the joint property of all the makers; still the form of the judgment should have been corrected upon motion in the Court below. Such motion was in fact made in the Court below, and that Court refused to make the correction. An appeal should have been taken from that order, but not from the judgment. (See 18 Cal. 141–3.)

*Fifth*—If judgment is erroneous in form, this Court will only send it back for correction. As for form of judgment against administrator, that is copied from the statute.

Opinion by BEATTY, J., BROSNAN, J., concurring.

The facts of this case are as follows: In 1860, Richard Raffer & Co. were doing business as partners at Humbug,

Maples *v.* Geller and Raffer.

California.   The plaintiff alleges W. H. Stoule was the part-
ner of Raffer.   Raffer & Co. executed their note to Joshua
Maples, at their place of business in California, on the 18th
day of January, 1860, payable on demand.   In the Winter of
1860, Joshua Maples died intestate, and, on the settlement and
distribution of his estate, this note of Raffer & Co. was turned
over by the administrator to the present plaintiff, who was the
widow of Maples, deceased.   On the 12th of January, 1862,
Stoule, the alleged partner of Raffer, died, and the defendant,
Geller, was appointed his administrator on the 7th of April,
1862.   On the 23d of February, 1863 (plaintiff alleges before
the time for presenting claims had expired), a demand was pre-
sented to the administrator of Stoule for the allowance of this
note against said estate.   Whether this demand was accom-
panied with the proper affidavit, such as is required to accom-
pany every demand against an estate of a decedent, does not
appear.   Nor does it appear by any affirmative allegation that
the claim was presented within ten months after the first pub-
lication of notice to creditors to present their claims.   It was
presented about ten months and sixteen days after letters of
administration were granted.   If the publication of notice fol-
lowed the grant of letters of administration as promptly as it
should have done, then the claim was not presented within ten
months.   What the facts were on this point the complaint does
not distinctly show, but merely that it was within the time
appointed by said administrator for the presentation of claims.
Suit was brought in April, 1863.   The complaint seems to be
in form, a joint action against Richard Raffer and the admin-
istrator of his deceased partner.   It is entitled, "*Mary Maples,
relict of Joshua Maples,* v. *Richard Raffer and Sol. Geller,
administrator of the estate of Wm. H. Stoule, defendants.*"
It then goes on to state the facts we have herein stated, and
winds up with the following prayer:  "Wherefore, this plain-
tiff prays judgment against defendants, and that said adminis-
trator of the estate of Wm. H. Stoule, pay, in due course of
administration, the said note with interest as aforesaid, and for
such other and further relief as may be just and equitable."

   To this complaint the defendant, Geller, demurred, within a
few days after it was filed, on two grounds:

*First*—That it did not state facts sufficient to constitute a cause of action.

*Second*—That it appeared on the face of the complaint that the claim was barred by the statute of limitations. The demurrer was overruled, and ten days given defendant, Geller, to answer. Within the ten days he did *file* his answer, but failed to serve it on plaintiff's attorneys. One of the plaintiff's attorneys came in, and on an *ex parte* affidavit that the answer had not been served on his firm, moved for judgment.

An order for judgment generally was made by the Judge, and the judgment was entered up on the 14th day of January, 1864, in favor of plaintiff, against the administrator, to be paid in due course of administration out of assets of deceased. Some eleven months after the judgment was entered, the defendant, Geller, moved to open the default, as it was termed, and set the judgment aside. This the Court refused to do, and the defendant appeals to this Court from the judgment rendered in January, 1864. Several errors are assigned: That the claim was barred by the statute of limitations; that it was error to enter judgment with an answer on file; that the form of the judgment should have conformed to the prayer of the complaint, etc.

The point as to the statute of limitations we have not examined particularly, and therefore express no opinion on that point.

We think the point that no judgment should have been rendered while the answer remained on file and undisposed of, is well taken. The statute requires an answer to be filed and served; but it does not require that there should be any evidence of service on the answer. In this respect it is very different from a complaint. The complaint must be served, unless service be waived, and proper evidence of that service, or waiver of service, brought before the Court before it will assume jurisdiction of the defendant. But when defendant has *filed* his answer, the Court has jurisdiction of the person, and no evidence of service of the answer is necessary to enable the Court to exercise all its powers over the parties. The requirement that the answer shall be served, is for the convenience of the opposite party, and not to confer jurisdiction

on the Court. It is not then *necessary*, although it might be more regular, for the answer to show evidence of service on the plaintiff or his attorney. If, then, it is not necessary that the answer should show service, the Court would not, in the first instance, be justified in treating an answer as a nullity when it did not show service. Nor do we think the Court would be justified in doing it upon an *ex parte* affidavit. An absolute personal service of an answer is never required. It may be served by sending by mail or leaving it at the office of the plaintiff's attorney. The mails frequently miscarry. A lawyer may well overlook a paper left on his table, and not be aware such paper ever was left there. In such case he might innocently make an affidavit that the answer had not been served, when in fact it had been legally served. It would certainly, then, be a very dangerous practice to allow judgments to be entered against defendants on *ex parte* affidavits that no answer had been served, where a sufficient answer was on file; but even admitting there was the most indubitable proof that no answer ever was *served*, it would be a very harsh method of proceeding against the defendant, to give judgment against him when he had a good defense to the action, because his attorney was careless or inattentive to his business. Such a practice might benefit careful, vigilant and attentive lawyers, but it certainly would not do justice to litigants, and would be calculated to bring Courts of justice into odium and contempt. Besides, there is not the slightest reason or necessity for such practice. If a lawyer neglects his duty in the service of an answer, a motion to strike out, unless a copy be served, with the taxing of the costs of motion against the attorney or his client would correct the evil, without depriving defendant of his right to a trial of the cause on the issues joined. We think for this cause the judgment should be reversed.

There are other branches of this case, that we will notice before sending it back to the District Court. The note is a joint note, or a partnership note. The action seems to be a *joint action at law* against the surviving partner and the administrator of the deceased partner.

It is hardly necessary to say such an action can never be maintained. On a joint note, where one of the makers dies,

the action survives against the living maker or makers. The representative of the deceased can never be joined with the survivors in an action at law. If the note be joint and several, the representative of a deceased maker may be sued on the *several* liability of his decedent; but in such case he is the sole party, the survivors cannot be joined with him. So that in no case can the survivors and an administrator be sued in the same action at law upon a promissory not. In equity the rule is somewhat different. Formerly it was held that after the creditor had exhausted his remedy against the survivors, or where they were bankrupt or insolvent, so that no proceeding against them could be made available, he might proceed in chancery against the estate of the deceased partner or joint debtor. Recently the rule has been somewhat modified, and Courts have generally held that, in equity, partnership debts (sometimes there has been an attempt to extend the rule to other joint debts) will be treated as joint and *several* debts, and the creditor be allowed to proceed against the estate of decedent as for a several debt due by him. Under this latter rule the creditor is allowed to file his bill praying for payment out of the assets of deceased, in the hands of his administrator or executor, without any allegation of bankruptcy or insolvency of the survivors; or, indeed, so far as we can see, any special reason being shown why the party has come into chancery when there is apparently a plain legal remedy open to him for the collection of his debt. This seems to be the law settled by modern cases. (See Colyer on Partnership, sec. 580; Storey's Equity Jurisprudence, sec. 676, and the authorities there cited.)

But whilst the law seems to have been so settled, generally in the more modern cases we are at a loss to understand why the former ruling on the subject was changed. The legal doctrine about the liability of the survivor has been settled beyond question for centuries. The partnership property all goes into the hands of the survivor, that he may be enabled to pay the partnership debts and settle the partnership affairs. The administrator of the deceased partner has nothing of the partnership assets until all the firm debts have been paid and its affairs wound up. The surviving partners ought to know

Maples *v.* Geller and Raffer.

all about the affairs of the partnership; the administrator of a deceased person can hardly be expected, as a general thing, to know much. These being the rights of the partners at law, we are at a loss to understand upon what principle Courts of equity break down the ancient rules in regard to partnership debts. We see no good reason for adopting the new rule on this subject, but many for adhering to the former practice; but if the modern decisions on this subject have been as uniform as they appear to be from the cursory examination we have made of the question, we may not feel at liberty to disregard them. We have made these suggestions because when this case goes back to the Court below, if it is possible so to amend the complaint as to show the plaintiff entitled to equitable relief, against the administration of Stoule, it should contain a statement of those facts (if any such exist) which would remove the doubts we have expressed. Under our system, which attempts to do away with all form, and as far as may be, to abolish all distinction between law and equity cases, it is difficult to say that any form of complaint may not be treated as a bill of equity. But whatever this complaint may be, it is not a bill in equity, seeking to obtain a decree against the appellant upon the ground that his decedent was severally bound for the payment of the note set out in the complaint. And, upon that theory alone, could the judgment in this case be sustained. It has been suggested by respondent that the appeal was not well taken in this case, because the error of the Court did not so much consist (if any error there be) in the original entry of judgment as in the refusal to set aside that judgment; that the appeal should have been from the order refusing to set the judgment aside. In this we think the counsel is in error. The judgment was clearly erroneous. We doubt extremely if the District Court could at the time the motion was made have set aside the former judgment. The case was beyond the control of that Court, so far as the judgment was concerned. The case is not at all similar to the California case referred to by counsel; in that case the party had a perfect remedy in the Court below. Default had been taken without personal service.

In such case the defendant had the statutory right (a right

which was absolute, and not depending on the discretion of the Court) to open the default. The party in default, without seeking to open the case in the Court below, appealed. The Supreme Court decided in effect that they would not look into the alleged errors in entering the default, because if it was entered regularly or irregularly the party without appeal could have the case opened up, and be heard in his defense on the merits, if he had any defense. ·

Here the party had no such absolute right. Either the judgment was or was not erroneous. If erroneous, the appellant has a right to reversal. If not erroneous, he could only address his application to the favor of the Court. The Court in such case could at most only have a discretionary power, with which this Court would not interfere, except in a case of manifest abuse. We think the appeal was properly taken from an erroneous judgment, and that it was the only appeal the defendant could sustain.

The judgment is reversed, and the cause remanded to the Court below. The District Court will allow the plaintiff to amend his complaint, and take such other steps in the case as may be consistent with the rules of practice, and not inconsistent with this opinion.

Chief Justice LEWIS, having been of counsel in the Court below, did not sit in this case.